UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

GUADALUPE RODRIGUEZ,

                       Plaintiff,

        - against -

DAWN J. BOURSIQUOT, ET AL.,

                       Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 17 MAR 2010

09 Civ. 0802(PAC) (KNF)

MEMORANDUM
OPINION & ORDER

HONORABLE PAUL A. CROTTY, United States District Judge:

    Pro se Plaintiff Guadalupe Rodriguez ("Rodriguez") brings this action against Defendants New York City Department of Education ("DOE"), the principal of Public School 173 ("P.S. 173"), Dawn J. Boursiquot ("Boursiquot"), and a number of other employees of the DOE (collectively, the "Defendants"),[1] pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"); New York State Human Rights Law §§ 290-297; and the New York City Human Rights Law, New York City Administrative Code §§ 8-101– 8-131. The gravamen of the Complaint is that after thirteen years of running an after-school program at P.S. 173, Rodriguez's program was denied access to the school's premises. Rodriguez contends that in denying her program access to P.S. 173, the Defendants subjected her to unequal terms and conditions of employment and denied her equal access to a public school facility. Rodriguez also claims that the Defendants harassed her, retaliated against her for opposing discrimination and engaged in child neglect.

---

[1] The other named Defendants are Gale Reeves, Dr. Brian Kaplan, Francesca Pena, and Bienvenido Torribo. Francis Mendez and Margaret Hill, former DOE employees, were named in the Complaint but were never served. P.S. 173 is located on Fort Washington Avenue in Northern Manhattan.

1

On February 3, 2009, the Court referred the general pretrial matters in this case to United States Magistrate Judge Kevin Nathaniel Fox. On July 9, 2009, the Defendants moved to dismiss the Complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[2] Rodriquez responded; and the motion was fully briefed on September 2, 2009. Magistrate Judge Fox issued a Report and Recommendation ("R&R") on November 12, 2009, recommending that the motion to dismiss be granted on the grounds that the Court lacks subject matter jurisdiction and Rodriguez has failed to state a claim upon which relief can be granted. In the R&R, Magistrate Judge Fox found that Rodriguez is not, and never has been, a DOE employee. Since no employer-employee relationship exists between Rodriguez and any of the Defendants, she may not bring a Title VII claim. Since Rodriguez does not have a valid Title VII claim, she does not have a valid retaliation claim; and it is clear that Rodriguez has no First Amendment retaliation claim because her First Amendment rights have not been chilled. Magistrate Judge Fox also found that Rodriguez lacks standing to bring a Title VI claim. Finally, as there is no basis for any federal claims, Magistrate Fox recommended that the Court decline to exercise supplemental jurisdiction over Rodriguez's state and municipal law claims.

Rodriguez filed timely Objections to the R&R ("Objections") on December 14, 2009. The Court has reviewed both the R&R and Rodriguez's Objections. For the reasons that follow, the Court adopts Magistrate Judge Fox's findings and recommendations, and the Defendant's motion to dismiss is granted.

---

[2] The DOE was not named as a movant in the Defendants notice of motion filed on July 9, 2009. On July 14, 2009, the Defendants filed an amended notice of motion naming the DOE as a movant.

2

## BACKGROUND

### I. Facts[3]

Rodriguez is the founder and president of the Heights Center for Immigrants Advocacy, Inc. ("HCIA"), a community-based tax exempt organization that, for 13 years, operated an after-school program at P.S. 173. As of September 5, 2006, however, Boursiquot, the principal at P.S. 173, denied Rodriguez's applications for a permit to run the HCIA after-school program at P.S. 173. That denial continues to the present. Rodriguez maintains she has been denied a permit, and equal access to the school premises, because of her race, "Hispanic," her national origin, "Latina/Dominican," her vocal opposition to discrimination, participation in various forms of advocacy, and HCIA's participation in a documentary film related to the Supreme Court decision in Brown v. Board of Education, 347 U.S. 483 (1954). (R&R at 2.) Rodriguez further claims that the HCIA's permit applications have been denied because she reported the "misconduct, retaliation, discrimination, defamation and child neglect [of the children who attend P.S. 173]." (Id. at 3.)

### II. Procedural History

Rodriguez filed a complaint with the New York State Division of Human Rights ("SDHR") on May 21, 2007, alleging discrimination on the basis of her race and national origin, and retaliation for her opposition to discrimination. The SDHR complaint form Rodriguez used to make her administrative charge advised her that "[b]y filing this complaint, you are also filing your complaint with the [United States] Equal Employment Opportunity Commission [("EEOC")] under . . . Title VII of the Civil Rights Act of 1964, as amended (covers race, color, religion, national origin, sex [discrimination] relating to employment." The EEOC determined it lacked jurisdiction over Rodriguez's complaint, because no employer/employee relationship

---

[3] Unless otherwise noted, the facts are taken from the R&R.

3

existed between Rodriguez and the respondents, Boursiquot and the DOE, and Rodriguez's administrative charge was dismissed on July 9, 2008. On September 15, 2008, the EEOC issued Rodriguez a notice of her right to commence an action in state or federal court. (R&R at 3.) And on January 28, 2009, Rodriguez commenced this action. Rodriguez's request for appointment of counsel was denied by Magistrate Judge Fox on November 12, 2009.

## DISCUSSION

### III. Standard of Review

A district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). When a timely objection is made to a Magistrate Judge's R&R, the Court is required to review the contested portions de novo. Pizarro v. Bartlett, 776 F. Supp. 815, 817 (S.D.N.Y. 1991). The Court, however, "may adopt those portions of the Report to which no objections have been made and which are not facially erroneous." La Torres v. Walker, 216 F. Supp. 2d 157, 159 (S.D.N.Y. 2000).

### IV. Subject Matter Jurisdiction

Rodriguez maintains that Magistrate Judge Fox erred in concluding that she was not an employee of the DOE; and accordingly that there is no jurisdictional basis for her Title VII claim.[4] Rodriguez asserts that P.S. 173 was her "legal workplace," and since Boursiquot maintained authority over the facilities she used for thirteen years, she was an employee of the DOE. (Objection to R&R at 7.) These arguments are not convincing.

Title VII defines "employee" as "an individual employed by an employer." 42 U.S.C. § 2000e(f). The Second Circuit has explained that,

---

[4] There is a question as to whether the DOE, as an entity, was properly served. For purposes of this opinion, the Court assumes that it was.

4

> [i]n applying this somewhat "circular" definition, we use a two-part test. First, the plaintiff must show she was hired by the putative employer. To prove that she was hired, she must establish that she received remuneration in some form for her work. This remuneration need not be a salary, but must consist of "substantial benefits not merely incidental to the activity performed." Once plaintiff furnishes proof that her putative employer remunerated her for services she performed, we look to 'the thirteen factors articulated by the Supreme Court in <u>Community for Creative Non-Violence v. Reid</u>,' to determine whether an employment relationship exists.

<u>United States v. City of New York</u>, 359 F.3d 83, 91-92 (2d Cir. 2004) (citations omitted).

In <u>Reid</u>, the Supreme Court set forth thirteen factors relevant to the question of whether an employment relationship exists:

> [1] the hiring party's right to control the manner and means by which the product is accomplished ... [;][2] the skill required; [3] the source of the instrumentalities and tools; [4] the location of the work; [5] the duration of the relationship between the parties; [6] whether the hiring party has the right to assign additional projects to the hired party; [7] the extent of the hired party's discretion over when and how long to work; [8] the method of payment; [9] the hired party's role in hiring and paying assistants; [10] whether the work is part of the regular business of the hiring party; [11] whether the hiring party is in business; [12] the provision of employee benefits; and [13] the tax treatment of the hired party.

<u>Cmty. for Creative Non-Violence v. Reid</u>, 490 U.S. 730, 751-52 (1989) (footnotes omitted).

As to the first factor in <u>City of New York</u>, Rodriguez admittedly received no salary from the DOE, nor did she receive remuneration in any form. (Objections at 7.) If anything, her organization, HCIA, was required to pay the DOE for access to P.S. 173. Rodriguez was quite simply never hired by the DOE. <u>City of New York</u>, 359 F.3d at 91-92. Indeed, Rodriguez concedes she was an employee of HCIA, not the DOE.

As to the second <u>City of New York</u> factor, we place the greatest emphasis on the first element of the <u>Reid</u> multi-factor test: "the extent to which the hiring party controls the manner and means by which the worker completes his or her assigned tasks." <u>City of New York</u>, 359 F.3d at 92 (quoting <u>Eisenberg v. Advance Relocation & storage, Inc.</u>, 237 F.3d 111, 114 (2d Cir.

5

2000)). Given Rodriguez's concession that she was employed by HCIA, it may be assumed that HCIA controlled the manner in which she completed her work. Certainly, there are no allegations that the DOE controlled how she completed her tasks and assignments. (Indeed, reading between the lines, it is clear that Rodriguez did what she wanted at HCIA, but that does not mean that the Defendants here can he held accountable).

The Court adopts Magistrate Judge Fox's finding that Rodriguez was not an employee of the DOE. The Court, therefore, lacks subject matter jurisdiction over Rodriguez's Title VII discrimination claim. Since Rodriguez was never employed by the DOE, there can be no Title VII employment discrimination claim and Rodriguez's Title VII retaliation claim also fails. See Tenny v. Essex County/Horace NYU Home, No. 1:05CV0506(GLS/DHR), 2006 WL 126766, at *3 (N.D.N.Y. Jan. 17, 2006) (dismissing both Title VII discrimination and retaliation claims because plaintiff was never employed by defendant).[5]

## V. Rodriguez's Title VI Claim

Since Rodriguez is proceeding pro se, Magistrate Judge Fox liberally construed her Complaint. McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999). He posited that Rodriguez might be asserting a claim under Title VI, based on the Defendant's decision not to issue the HCIA a permit to use P.S. 173's premises. (R&R at 7.)

Title VI provides:

No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

---

[5] Magistrate Judge Fox explained that Rodriguez's Title VII claim cannot be brought against the individual DOE employees. (R&R at 5.) Magistrate Judge Fox is correct; in Tomka v. Seiler Corp., 66 F.3d 1295, 1314 (2d Cir. 1995) the Second Circuit held that "that the statutory scheme and remedial provisions of Title VII indicate that Congress intended to limit liability to employer-entities with fifteen or more employees." Rodriguez does not object to Magistrate Judge Fox's conclusion that the individually named Defendants are not "employer-entities" and the Court adopts his recommendation that the Title VII claims against the individual defendants be dismissed.

42 U.S.C. § 2000d. Under Title VI, recipients of federal financial assistance, "such as a local Board of Education, may not 'provide any service, financial aid, or other benefits to an individual which is different, or is provided in a different manner, from that provided to other under the program' on the basis of race, color or national origin." Schuler v. Bd. of Educ. of Cent. Islip Union Free School Dist., No. 96-CV-4702(JG), 2000 WL 134346 at *10 (E.D.N.Y. Feb. 1, 2000) (quoting 34 C.F.R. § 100.3(b)(1)(ii)). To have standing to bring a Title VI claim, the plaintiff must "allege that: (1) [the defendant] received federal financial assistance, (2) [the plaintiff] was an intended beneficiary of the program or activity receiving the assistance, and (3) [the defendant] discriminated against [the plaintiff] on the basis of race, color, or national origin in connection with the program or activity." Commodari v. Long Island Univ., 89 F. Supp. 2d 353, 378 (E.D.N.Y. 2000).

Magistrate Judge Fox held that that Rodriguez failed to allege that she was the intended beneficiary of any federal financial assistance received by the DOE and therefore a viable Title VI claim has not been stated. (R&R at 7.) In her Objections, Rodriguez alleges – for the first time – that "her students and herself were beneficiar[ies] of federal financial assistance received by the DOE since 1995" because her program "operated under the umbrella" of the Community Education Resource Center ("CERC"), a program funded by the DOE to the sum of $90,000. (Objections to R&R at 10-11.) This argument is inappropriate; Rodriguez "may not now raise new arguments that the magistrate judge did not have an opportunity to consider when drafting [his] R & R." Illis v. Artus, 06 CV 3077 (SLT)(KAM), 2009 WL 2730870 at *1 (E.D.N.Y. Aug. 28, 2009).

On the assumption that the DOE did received federal monies when Rodriguez was denied access to the P.S. 173 premises, "[t]he intended beneficiaries of a federally funded public school

7

program are school children, not their parents." Schuler v. Bd. of Educ. of Cent. Islip Union Free School Dist., No. 96-CV-4702(JG), 2000 WL 134346 at *10 (E.D.N.Y. Feb. 1, 2000) (quoting Jackson v. Katy Ind. Sch. Dist., 951 F. Supp. 1293, 1298 (S.D.Tex.1996)). Rodriguez's claim is not on behalf of a child; indeed it is not on behalf of the HCIA either, but rather on her own behalf. As such, she lacks standing to bring the Title VI claim. Accordingly, the Court adopts Magistrate Judge Fox's finding that Rodriguez lacks standing to bring a Title VI claim. (R&R at 5-6.)

**VI. Rodriguez's First Amendment Retaliation Claims**

Rodriguez asserts that she was denied a permit to run HCIA's after-school program at P.S. 173 because she spoke out against discrimination.[6] Magistrate Judge Fox determined that Rodriguez might also be asserting a retaliation claim under the First Amendment. (R&R at n.3.) To state a viable First Amendment retaliation claim, the plaintiff must allege that,

> (1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right.

Curley v. Vill. of Suffern, 268 F.3d 65, 73 (2d Cir. 2001).

First, while Rodriguez sets forth a host of conduct she engaged in which is protected by the First Amendment – for example, participating in the filming of "beyond Brown pursuing the promise" – she does not set forth any facts which indicate that she was denied access to P.S. 173 because she engaged in the constitutionally protected conduct. (Objections at 14.) Nor does she allege that the denial of her applications to run HCIA's after-school program at P.S. 173 has in any way hindered her ability to engage in such protected conduct. Second, to the extent Rodriguez claims that she was denied access to P.S. 173 because she opposed Bursiguot's

---

[6] Rodriguez's claim that this conduct violates Title VII has already been rejected. If there is no employer/employee relationship (and hence no valid Title VII discrimination claim) there is no plausible Title VII retaliation claim.

8

"discriminatory conduct," she has continued to oppose Boursiquot's alleged discriminatory conduct by filing complaints with the Special Commissioner of School Investigation, with the most recent complaint occurring in May, 2009. (R&R at n.3.) Thus, Boursiquot's decision not to issue a permit to HCIA has not "actually chilled" Rodriguez's exercise of her First Amendment rights. Rodriguez's First Amendment claim is without merit. The Court accordingly adopts Magistrate Judge Fox's finding that Rodriguez has failed to state a First Amendment retaliation claim.[7]

### VII. Rodriguez's § 1981(a) Claim

In her Objections, Rodriguez invokes 42 U.S.C. § 1981(a) and argues that the Defendants discriminated against her by not renewing her permit. (Objections to R&R at 7-9.) Section 1981 provides that "all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). To state a claim under § 1981, "a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one of more of the activities enumerated in the statute (i.e., make and enforce contracts . . . .)." Mian v. Donaldson, Lufkin & Jenrett Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993).

Rodriguez has failed to set forth any factual allegations in support of her conclusory assertion that she was denied a permit because of her race and has therefore failed to satisfy the pleading requirements of Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). While Rodriguez alleges that she was retaliated against because she "participated [in] the filming of 'beyond Brown pursuing the promise' in 2004, and

---

[7] In her Objections, Rodriguez makes vague and passing references to "equal protection," "procedural due process," the Fourteenth Amendment, and various sections of the United States Code. (Objections to R&R at 1, 6, 14.) These references to the Constitution and federal statutes are unsupported by argument and devoid of merit.

that HCIA "traveled to Albany to participate in the Advocacy Day event," her allegation is wholly unsupported, and without more, does not show that Boursiquot's decision to deny Rodriguez a permit to run the HCIA after-school program at P.S. 173 was racially motivated. (Objections to R&R at 14.) Rodriguez's also points out that the HCIA program was "replaced by another unlicensed after school program run by a white-male from the community." (Objections to R&R at 10.) But simply because a person of a different race was granted a permit while Rodriguez was not does not show "an intent to discriminate on the basis of race." Mian, 7 F.3d at 1087. Rodriguez's § 1981 claim is without merit.

## VIII. Supplemental Jurisdiction

Given his recommendation that Rodriguez's federal claims be dismissed, Magistrate Judge Fox recommended that the Court decline to exercise its supplemental jurisdiction over Rodriguez's state law claims. (R&R at 9.) The Court agrees, and will not exercise its supplemental jurisdiction over Rodriguez's state and municipal anti-discrimination law claims. The Court also rejects Rodriguez's request for appointment of counsel.

## CONCLUSION

For the foregoing reasons, the Court accepts and adopts the Report and Recommendation as its opinion. Defendants' motion to dismiss is GRANTED and the Complaint is DISMISSED. The Clerk is directed to close this matter.

Dated: New York, New York
      March 17, 2010

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge

Copies To:   Honorable Nathaniel Fox
United States Magistrate Judge

Guadalupe Rodriguez
46 Fort Washington Avenue #57
New York, NY 10032

Jesse D. Capell
Jason A. Kroll
New York City Law Department
100 Church Street
New York, NY 10007